JUDGE PAULEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**11 CIV 0843**

---

CHARLES W. FLETCHER JR,

        Plaintiff,

-against-

THE NEW YORK CITY POLICE DEPARTMENT,
NEW YORK CITY POLICE PENSION FUND,
THE CITY OF NEW YORK, AND RAYMOND W.
KELLY, AS COMMISSIONER OF THE NEW YORK
CITY POLICE DEPARTMENT,

        Defendants.

ECF Case

Case No.

**COMPLAINT**

RECEIVED FEB 07 2011 U.S.D.C. S.D.N.Y. CASHIERS

---

Plaintiff, Charles W. Fletcher Jr., by his attorneys, Conover Law Offices, for his complaint against defendants, The New York City Police Department, the New York City Police Pension Fund, the City of New York, and Raymond W. Kelly, as Commissioner of the New York City Police Department, respectfully alleges as follows:

### NATURE OF ACTION

1.     This is an action for damages against defendants for discrimination and retaliation on the basis of disability in violation of Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 *et seq.* (hereafter "Rehabilitation Act"), on the basis of race under 42 U.S.C. §1981 *et seq.*, (hereafter "Section 1981"), and on the basis of race and disability under the New York City Human Rights Laws §8-101 *et seq.* (hereafter "HRL").

### JURISDICTION AND VENUE

2.     The jurisdiction of this Court over this controversy is invoked pursuant to 28 U.S.C. §1331 and 42 U.S.C. §12101 *et seq.*, and the Court's pendent jurisdiction is invoked for claims arising under state statutory and/or common law.

3.	Venue in this Court is proper in that defendants maintain offices in the District, and plaintiff's claims arose in this District.

## ADMINISTRATIVE PROCEEDINGS

4.	On or about October 27, 2010, plaintiff Charles W. Fletcher, Jr. ("Fletcher") filed a timely charge alleging disability discrimination and retaliation by defendants with the Equal Employment Opportunity Commission ("EEOC").

5.	As the EEOC has not yet issued a Notice of Right to Sue with respect to the disability and race discrimination Charge, plaintiff intends amend the Complaint upon the issuance of a Notice of Right to Sue, to include said claims under the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA") and the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, as amended in 1972 and 1991 (hereafter "Title VII").

## PARTIES

6.	Plaintiff is a citizen of the United States, residing in the County of Queens, and State of New York, and is African-American. At all relevant times he met the statutory definition of an "employee" under all applicable statutes.

7.	At all times relevant, defendant The New York City Police Department ("NYPD") is and was a public agency, and the largest municipal police force in the United States, and met the definition of an "employer" under all applicable statutes.

8.	At all times relevant, defendant, the City of New York ("NYC"), is and was a municipal corporation amenable to be sued in its own name.

9.	At all times relevant, defendant, New York City Police Pension Fund, ("Police Pension Fund"), is and was a mayoral agency, department or other administrative subdivision of the defendant NYC.

10. At all times relevant, defendant, Commissioner Raymond W. Kelly, is and was a resident of the state of New York, employed by and with supervisory and managerial authority over the NYPD, with offices at One Police Plaza, New York, New York.

## FACTS

11. On or about April 21, 1997 Fletcher was employed with the NYPD and entered the police academy.

12. Fletcher was qualified for the job in that he passed the written Civil Service examination, met all educational criteria, successfully completed medical, psychological, and character examinations, as well as a physical job standard test, and he completed his training in the police academy.

13. At all times relevant, Fletcher possessed a valid, unrestricted New York State Drivers' License.

14. Fletcher's job performance was always excellent. He received promotions and raises in recognition of his excellent performance.

15. On or about October 4, 1999, Fletcher experienced his first seizure, while sleeping.

16. Subsequent to his first nocturnal seizure, he was prescribed Dilantin, an anticonvulsant medication used to control, treat and prevent seizures. His medication was later changed to Phenytek, a similar medication.

17. In or about late October, 1999, Fletcher was cleared by his doctor to return to work, which he did.

18. Fletcher never experienced a seizure during work; his few, intermittent seizures occurred only while sleeping. He did not experience any side effects from anticonvulsant medication that affected his job performance.

19. In or about July 2001, Fletcher was promoted to the rank of Detective.

20. Upon information and belief, NYPD Detectives were and continue to be subject to random drug testing.

21. In or about April 2006, Fletcher disclosed his anticonvulsant medication at a random drug testing by the NYPD.

22. In or about April 2006, the doctor who reviewed his medical records informed him that "you are not supposed to be on the job," and put him on limited duty.

23. On or about February 5, 2007, Fletcher was placed on restricted duty. He had to surrender his gun and shield, and he was limited to desk duty, with little to no opportunity to earn overtime pay.

24. On or about August 3, 2007, Fletcher requested reinstatement to full duty as a Detective; asserted that his removal from active duty was in violation of the Federal, State and City disability discrimination laws; and attached proof of medical fitness in the form of medical reports by his neurologist, Dr. Bradley Cohen, dated February 19, 2007 and April 16, 2007, to the effect that Fletcher' seizures are controlled with medication, and that he is capable of performing his job duties.

25. Specifically, Dr. Cohen wrote, on or about April 16, 2007 "I do think that he is cleared, neurologically, to go back to working more active[ly] outside of the office. I do not see any contra-indications for him going back to his normal activities of work and/or daily living,

since he has been maintained on this medication for many years, without any incidents and most importantly, Mr. Fletcher has remained seizure-free."

26. On or about December 12, 2007, October 29, 2008, and April 15, 2009, Fletcher appeared before the Article II Medical Board of the Police Pension Fund to challenge the decisions of the Police Pension Fund and the NYPD to deny reinstatement to active duty.

27. After each appearance before the Article II Medical Board, the Board denied Fletcher's request for reinstatement to full duty.

28. Despite Fletcher's repeated requests for reinstatement to active duty, defendants continued to unlawfully subject him to restricted duty.

29. While on restricted duty, Fletcher's earnings were significantly reduced due to the lack of overtime earnings; furthermore, his responsibilities were limited to desk duty – significantly diminished responsibilities compared to those of an active duty detective.

30. On or about December 30, 2009, Fletcher was terminated and retired.

31. At the time of his termination, Fletcher had been off medication and seizure-free for over one year.

32. On or about January 11, 2010, Fletcher wrote to Commissioner Kelly to request reinstatement, which request was ultimately denied.

33. On or about March 17, 2010 Fletcher appeared, as directed, before the Article II Medical Board of the Police Pension Fund, and requested reinstatement to active, full-duty status.

34. Fletcher provided additional medical evidence at the March 17, 2010 appearance before the Medical Board in support of reinstatement, including a letter from his neurologist